ZANE, C. J., and SMITH, J., concurred.

JOHN O. SMITH AND OTHERS, RESPONDENTS, *v.* A. F. SIPPERLEY AND OTHERS AND M. J. GRAY AND OTHERS, INTERVENORS, APPELLANTS.

[ See *Pettit* v. *Parsons, ante.*]

ASSIGNMENT FOR CREDITORS.—ILLEGAL PREFERENCE.—FRAUD.—An assignment for the benefit of creditors made by a partnership, which assigns all the partnership property, and prefers creditors of individual partners, who loaned money to the individual partners, knowing it was to go into the partnership business, and that both partners were at the time of so loaning, insolvent, is fraudulent in fact.

ID.—ID.—VOID IN PART.—An assignment for the benefit of creditors, which contains preferences which are made with a fraudulent intention and which is fraudulent in fact, is wholly void, irrespective of the fact, whether or not the assignee or beneficiaries knew of the fraud or were party to the fraud.

APPEAL from a judgment of the district court of the third district, Hon. Charles S. Zane, judge. The opinion states the facts except the following:

The appeal was from the judgment, and hence was on the judgment roll alone. The evidence was incorporated in the record, but was not made part thereof by any bill of exceptions or statement upon motion for new trial.

The findings of the court below were very full, and were in substance as follows: That on January 13, 1892, the assignment was executed to Frank W. Ross, and stated that Sipperley & Co. were indebted to three creditors, who were called Schedule A, and that A. F. Sipperley was indebted to Mrs. A. F. Sipperley and Mrs. E. J. Walling, and said H. S. Lee, the other partner, was indebted to H. A. Lee, who were called Schedule B, and A. F. Sipperley & Co. were indebted to various creditors, naming them, who were called Schedule C, and said A. F. Sipperley & Co. conveyed all their partnership property to said F. W. Ross to pay first creditors in Schedule A, then in Schedule B, then in Schedule C; this assignment was recorded and the assignee took possession, after which the plaintiffs' attachments were levied; that the assignment included all the partnership property, and at the time and ever since said Sipperley and Lee were insolvent, and knew they were; that in March, 1887, A. F. Sipperley, about to embark in the mercantile business at Greeley, Colorado, borrowed from his wife, the intervenor, $4,800, and from his aunt, Mrs. E. J. Walling, the intervenor, $1,400, which sums, with the knowledge of said intervenors, were to be

used in the mercantile business, and which were actually used at Greeley, Colorado, and embarked in the firm of A. F. Sipperley & Co., composed of A. F. and H. D. Sipperley, which copartnership was continued for a year and a half, when H. D. Sipperley retired and then A. F. Sipperley, under the firm name, continued the business until August, 1891, when said H. S. Lee entered the partnership, he about that time borrowing from H. A. Lee, his son, $2,000, to be used with said H. A. Lee's knowledge and consent in said partnership business and was in fact used therein. Said firm then removed to Salt Lake City and in contemplation thereof ordered large purchases of goods; that the debts to Mrs. Sipperley, Mrs. Walling, and H. A. Lee were individual obligations of either partner, and were the only capital of the firm and so reported and held out; that said assignment was made by said Sipperley and said Lee to hinder, delay and defraud their creditors; that attachments were sued out and levies made by plaintiffs and they were entitled to the proceeds of the goods in the order of their levies.

*Mr. John W. Judd,* for the intervenors.

The partnership had the right to devote partnership property to the payment of their private debts. *Case v. Beauregard,* 99 U. S. 119, *Fitzpatrick* v. *Flannagan,* 106 U. S. 654; *Husikamp* v. *Moline Wagon Co.,* 121 U. S. 322. Even if the court finds that the preferences of the individual creditors are fraudulent, that does not affect the legal preferences. *Lassell* v. *Tucker,* 5 Sneed, 1, 22 Wend. 486, 4 Baxter, 164, 15 N. Y. 96.

*Messrs. Dey and Street,* and *Mr. Clesson S. Kinney,* for the respondents.

SMITH, J.:

A. F. Sipperley and H. S. Lee were, prior to January 13, 1892, partners doing business as merchants at Salt Lake City, and on the above date made an assignment for the benefit of their creditors of all of their property to F. W. Ross. The written assignment, which appears in the record, after creating a class of first preferred creditors, which is denominated "Schedule A," contains the following clause: "And whereas, the said A. F. Sipperley is indebted to Mrs. A. F. Sipperley by note dated the 10th day of March, 1887, for $4,800.00, and to Mrs. E. J. Walling of South Cambridge, New York, by note of fourteen hundred dollars ($1,400.00); and whereas the above said H. S. Lee is indebted to H. A. Lee by note in the sum of two thousand dollars ($2,000.00). These last-named three debts shall hereafter be known in this conveyance as 'Schedule B.'" Then follows a long list of creditors of the firm, who are classed as "Schedule C." The writing provides that the assignee shall pay the debts in the following order: First; Schedule A in full; next, Schedule B in full; next, Schedule C in full; and the surplus, if any, to the assignors. Schedule A amounts to about $3,000. Schedule B, as above shown, amounted to $8,200, without interest. Schedule C amounted to about $22,000. Only $11,000 was realized from the property assigned.

A number of the creditors named in Schedule C renounced the assignment so far as their claims were concerned, and attached the property of Sipperley & Co. in the hands of Ross, the assignee. Ross defended, and the creditors in Schedules A and B intervened. Ross was afterwards by agreement appointed receiver by the court, and as such sold the property, and holds the proceeds to be disposed of by the judgment of the court. The court found, among

other things, the following facts: That Mrs. A. F. Sipperley was the wife, and that Mrs. E. J. Walling was the aunt of the assignor A. F. Sipperley; that H. A. Lee was the son of the assignor H. S. Lee; that the firm of Sipperley & Co., and both members thereof, were insolvent, and had each and all been insolvent since the time they first began business in 1887; that the money due to the parties named in Schedule B was the only capital employed by said firm in said business, and was loaned by said creditors to the members of the firm, to be used as such capital, with full knowledge of the insolvency of the firm and the members thereof; that the attaching creditors did not know of the existence of these debts until the assignment was made. The eleventh finding of fact is "that said assignment was made by said defendants A. F. Sipperley and H. S. Lee to said Frank W. Ross with intent to hinder, delay, and defraud their creditors." After making proper conclusions of law the court entered judgment making distribution of the fund in the hands of the receiver among the attaching creditors in the order of their attachments, and dismissed the petition in intervention. The interveners appeal.

The first question presented is: Was the assignment void because of the preference of the creditors of the individual partners as provided in Schedule B? The next and remaining one is: If the assignment is void as to the preference given to the parties named in Schedule B, is it not valid for all other purposes?

As to the first question, it is conceded the firm was always insolvent, and that the members thereof were likewise insolvent. The creditors in Schedule B knew this, and knowingly loaned the money, to be used as capital in this business. Is it a fraud upon the other creditors to provide for and prefer these parties? We think it is well settled that such an act is fraudulent and void. In *Webb*

v. *Armistead,* 26 Fed. Rep. 70, which was a case very like
the one under consideration, the court says: "These cred-
itors were dealing with him on the faith of such capital in
ignorance of the fact that he was all the time insolvent,
and that large family debts of many thousand dollars were
lying in abeyance to be preferred whenever the business
should come to the disastrous end, which was inevitable.
I do not know how a more gross injustice could be done
those who gave credit on the faith of a large in-put capital
than was done by this deed, which revealed the fact when
it was too late that there was no capital whatever avail-
able to protect them in the event of losses in trade or
shrinkage in value." This language we have quoted at
length, because it so aptly describes the case at bar. To
the same effect are the cases of *Ferson* v. *Monroe,* 21 N.
H. 462; *Bailey* v. *Clark,* 21 Wall. 284; *Cribb* v. *Morse,* 77
Wis. 322, 46 N. W. Rep. 126.

This brings us to the second question, can the assign-
ment be upheld in any part? The supreme court of the
United States in *Peters* v. *Bain,* 133 U. S., at page 670,
10 Sup. Ct. Rep. 354, say: "We agree that, as respects
fraud in law as contradistinguished from fraud in fact,
where that which is valid can be separated from that
which is invalid without defeating the general intent, the
maxim 'void in part, void in toto' does not necessarily
apply;" and this rule is relied on by appellants to sustain
the assignment notwithstanding the fraudulent preferences
in Schedule B. At the argument we were forcibly im-
pressed with this suggestion, but the trouble is that in
this case the assignment is fraudulent in fact. It was
made with a fraudulent design and purpose. This fact is
expressly found. The rule in such a case is declared in
*Crawford* v. *Neal,* 144 U. S., at page 598, 12 Sup. Ct.
Rep. 759, as follows: "Undoubtedly the rule is that a
transaction void in part for fraud in fact is entirely void."

The rule is fully stated, with the authorities in support of it,. in Burrill, Assignm. (5th Ed.) § 352. See, also, *Vernon* v. *Upson*, 60 Wis. 418, 19 N. W. Rep. 400. We find no. error in the record, and the judgment of the district court is affirmed, with costs to respondents.

MINER, J., and BARTCH, J., concurred.